05/09/2012 09:23 FAX 870 239 3550     GREENE CO. CIRCUIT CLERK     ☒002/082
8/09721787

15·10:03 a.m.    04-17-2012     2 /25

## IN THE CIRCUIT COURT OF GREENE COUNTY, ARKANSAS
### PARAGOULD DIVISION

**FILED**

**APR 1 8 2012**

**GREENE CO CIRCUIT CLERK**

ROBERT DICKINSON;
PAMELA DICKINSON; and
All Residents of Arkansas that are similarly situated

**PLAINTIFFS**

V.            CV-2011-11 (DL)

SUNTRUST MORTGAGE, INC., and
FEDERAL NATIONAL MORTGAGE ASSOCIATION

**DEFENDANTS**

---

## FIRST AMENDED CLASS ACTION COMPLAINT

---

Come now the Plaintiffs, Robert and Pamela Dickinson, by and through their attorneys, for their First Amended Class Action Complaint against SunTrust Mortgage, Inc. ("SunTrust") and Federal National Mortgage Association ("Fannie Mae"), hereby incorporate the allegations in their original Complaint and state:

### NATURE OF THE CLASS ACTION

1.    Plaintiffs bring this class action complaint on their own behalf and as representatives of two classes of Arkansas residents who were subject to non-judicial foreclosure proceedings within the State of Arkansas in the past five years.

2.    The first class of Arkansans allege violations of the Arkansas Deceptive Trade Practices Act ("ADTPA") by Defendant SunTrust Mortgage, Inc. by forcing Plaintiffs and members of the class to pay unfair and unconscionable fees related to non-judicial foreclosure proceedings conducted in the State of Arkansas (hereafter, the "Suntrust Unfair Fee Class")..

3.    The other class of Arkansans suffered damages in relation to Defendant Fannie Mae's misuse and violations of the Arkansas Statutory Foreclosure Act of 1987 ("SFA") by

1

failing to strictly follow its provisions and choosing not to register to do business in Arkansas in violation of the ADTPA (hereafter, the "Fannie Mae Non-Registration Class").

4.     In sum, this action is brought to remedy Defendants' charging of unfair and unconscionable fees through non-judicial foreclosure proceedings, and also for non-judicially foreclosing on homes in Arkansas when not being authorized to do business in Arkansas, all of which violated the provisions of the ADTPA.

### JURISDICTION AND PARTIES

5.     Plaintiffs are residents of Paragould, Greene County, Arkansas.

6.     Upon information and belief, Defendant SunTrust is a corporation organized and existing under the laws of the State of Virginia and maintains a principal office address at 901 Semmes Ave., Richmond, VA., 23224. Upon information and belief, SunTrust is a wholly-owned subsidiary of SunTrust Bank ("STB"). SunTrust has maintained significant contacts within the State of Arkansas, and is, therefore, subject to both the subject matter and personal jurisdiction of this Court.

7.     Upon information and belief, SunTrust is not the owner of the Plaintiffs' note and mortgage but is actually servicing the same for the actual owner, Fannie Mae. Thus, SunTrust is Fannie Mae's agent.

8.     Upon information and belief, Fannie Mae was founded in 1938 during the Great Depression as part of the New Deal. It is a government-sponsored enterprise though it has been a publicly traded company since 1968. The corporation's purpose is to expand the secondary mortgage market by securitizing mortgages in the form of mortgage-backed securities (or, "MBSs"). These MBSs allow lenders to reinvest their assets into more lending and increase the number of lenders in the mortgage market by reducing the reliance on thrifts. Fannie Mae also

acquires funds to purchase mortgage-related assets for its mortgage portfolio by issuing a variety
of debt securities in the domestic and international capital markets.[1]  Fannie Mae is not registered
to do business in the State of Arkansas.  The Arkansas Secretary of State's electronic database
and a check of the Arkansas Banking Commission's list of "Out of state banks holding
Certificates of Authority to do business in Arkansas" shows no registrations for Fannie Mae.
However, Fannie Mae has maintained significant contacts within the State of Arkansas, and is,
therefore, subject to both the subject matter and personal jurisdiction of this Court.

9.      The property which is the subject matter of this action and which has been the
subject of a non-judicial foreclosure action pursuant to Ark. Code Ann. §18-50-101, *et seq.*, is
located at 2905 Carriage Hill Drive, Paragould, Greene County, Arkansas, 72540.

10.     Jurisdiction and venue are proper in this Court.

## FACTUAL BACKGROUND

### I.   The Foreclosure Crisis

11.     Over the last three years, the United States has been in a foreclosure crisis. A
congressional oversight panel has recently noted that one in eight mortgages in the United States
is currently in foreclosure or default.[2]

12.     In testimony before the United States Senate Subcommittee on Administrative
Oversight and the Courts of the Committee on the Judiciary on July 23, 2009, Alys Cohen of
the National Consumer Law Center testified as follows:

> Goldman Sachs estimates that, starting at the end of the last quarter of
> 2008 through 2014, 13 million foreclosures will be started. The Center for
> Responsible Lending, based on industry data, predicts 2.4 million
> foreclosures in 2009, and a total of 9 million foreclosures between 2009

---

[1] http://www.google.com/finance?q=FEDERAL+NATIONAL+MORTGAGE+ASSOCIATION
[2] Congressional Oversight Panel, Oct. 9, 2009 report at 3. Available at:
http://cop.senate.gov/reports/library/report100909-cop.cfm.

11 10:34 a.m.    04-17-2012          5/25

and 2012. At the end of the first quarter of 2009, more than 2 million homes were in foreclosure. Over twelve percent of all mortgages had payments past due or were in foreclosure and over seven percent were seriously delinquent -either in foreclosure or more than three months delinquent. Realtytrac recently reported an additional 300,000 homes go into foreclosure every month. These spiraling foreclosures weaken the entire economy and devastate the communities in which they are concentrated. Neighbors lose equity; crime increases; tax revenue shrinks.[3]

**II.     The Arkansas Statutory Foreclosure Act. Ark. Code Ann. §§18-50-101, *et seq*.**

13.     The Arkansas General Assembly enacted the SFA, Ark. Code Ann. § 18-50-101 *et seq.* in order to "provide an efficient and fair procedure for the liquidation of defaulted mortgage loans to the benefit of both the homeowner and the mortgage lender." (Acts 1987, No. 53, § 19: Feb. 18, 1987; Emergency Clause).

14.     The SFA, as enacted and modified from time to time by the General Assembly, contains requirements that must be met in order for mortgagees to avail themselves of the right to employ the SFA.

15.     Pertinent to the instant case, Ark. Code Ann. §§ 18-50-116 and 117 require that any entity employing the use of the SFA to non-judicially foreclose on property in this state be a mortgagee or beneficiary of a mortgage company as defined in § 18-50-101 or a bank or savings and loan and they further require that the foreclosing entity be "authorized to do business in this state." Pursuant to ACA §18-50-101(1) and (6), a beneficiary is "a person named or otherwise designated in a deed of trust as the person for whose benefit a deed of trust is given or his successor in interest," and a mortgagee is "the person holding an interest in real property as security for the performance of an obligation or his or her attorney-in-fact appointed pursuant to this chapter."

---

[3] Available online at: http://www.consumerlaw.org/issues/mortgage_servicing/content/Testimony-Worsening_forecl_072309.pdf.

4

16.    The General Assembly found that, "foreign entities not authorized to do business in the State of Arkansas are availing themselves to the provisions of the Statutory Foreclosure Act of 1987; that often times it is to the detriment of Arkansas citizens; and that this act is immediately necessary because these entities should be authorized to do business in the State of Arkansas before being able to use the Statutory Foreclosure Act of 1987." Acts 2003, No. 1303, § 3: Apr. 14, 2003.

17.    Pursuant to Ark. Code Ann § 18-S0-116(d)(2)(A)(B)(ii) nothing in this chapter shall be construed to impair the right of any person or entity to assert his or her legal and equitable rights in a court of competent jurisdiction.

18.    If the mortgagor fails to raise his or her legal or equitable rights in a court of competent jurisdiction before the sale of the property, then the mortgagor will waive such right or defense to the sale. However, the General Assembly added specific protections for the mortgagor to protect his or her property interest should the mortgagee or trustee fail to properly execute a foreclosure sale pursuant to the SFA. While Ark. Code Ann. § 18-50-116 provides for the waiver of any defenses that the mortgagor could have raised prior to the foreclosure sale, it allows for the assertion of the following claims:

> § 18-50-116(d)(2)(b)(i) Fraud; or (ii) Failure to strictly comply with the provisions of this chapter, including without limitation subsection (c) of this section.

19.    Moreover, because the SFA, abrogates the common law and allows for the taking of property without judicial oversight, the Arkansas Supreme Courtheld that, "Any statute which is in derogation of or at variance with the common law must be strictly construed." *Henson v. Fleet Mortg.Co.,* 319 Ark. 491, 497 (Ark. 1995).

5

20.     The U.S. Bankruptcy Court for the Eastern District of Arkansas recently held that a bank which had failed to register to do business in the State was not qualified to conduct non-judicial foreclosures in Arkansas.*In re Johnson*, 460 B.R. 234 (Bank. E.D. Ark. 2011).

21.     Moreover, the Court in *Johnson* rejected the bank's argument that it had qualified to use the SFA through the status of its agent.

22.     Recently, the Arkansas Legislature, took up the question of whether or not an out-of-state entity was required to register with the Secretary of State's office to conduct statutory foreclosures pursuant to the SFA.  Attached hereto and incorporated herein as Exhibit "A" is a copy of the Hall of the House of Representatives, Fiscal Session, 2012, Amendment Form ("HB 1147").

23.     The Legislature respectfully declined to repeal or otherwise amend the language in Ark. Code Ann. §18-50-117 requiring entities authorized under §18-50-116 to also obtain authority to conduct business in the State of Arkansas.   Thus, registration is a continued requirement for any person who seeks to conduct non-judicial foreclosures in this state.

24.     In addition to the above, pursuant to ACA  21 18-50-105(2) and (3), the SFA requires that the mortgagee or trustee, in this case Fannie Mae, employ third-party vendors to perform such services as posting foreclosure notices at the courthouse and another for posting the address on the internet.

## III.    The Plaintiffs' Loan

25.     The Plaintiffs originally purchased their home located at 2905 Carriage Hill Drive, Paragould, Greene County, Arkansas, 72450 sometime in 1999 or 2000.

26.     On or about April 24, 2008, Plaintiffs entered into a refinancing of their original mortgage loan with First National Bank as lender.  The note was in the amount of $96,000.00 at

6

5.875% interest, with the first payment of $567.88 to begin on June 1, 2008. The $567.88 payment does not include amounts for escrow.

27.    The note was secured by a mortgage of even date therewith, and recorded in the property records of Greene County, Arkansas as Document #200804260 on May 16, 2008.

28.    Also, a purported Assignment of the Mortgage and the Note from First National Bank to Mortgage Electronic Registration Systems, Inc. ("MERS") was executed on April 24, 2008 by Dora Edings, as SVP Mortgage Lending for First National Bank. The assignment was recorded in the property records of Greene County, Arkansas as Document #200804859 on May 30, 2008. A purported copy of the note and copies of the recorded Mortgage and Assignment are attached hereto and incorporated herein as Exhibit "B".The copy of the note attached hereto is a copy received by the Plaintiffs from SunTrust. Plaintiffs are without knowledge as to whether or not this is a true and correct copy of the note.

29.    The copy of the note contains an undated endorsement from First National Bank, the note and mortgage originator, payable to the order of Defendant SunTrust and is signed by Dora Edings, SVP Mortgage Lending for First National Bank.

30.    Servicing of the mortgage was transferred to SunTrust from First National Bank sometime thereafter.

31.    In December of 2009, even though they were current on the mortgage payments, the Plaintiffs were aware that their financial situation was deteriorating due to severe medical problems suffered by Plaintiff Pamela Dickinson and because of a business failure. While they were able to keep up their mortgage payments, they contacted SunTrust in the hopes of modifying their loan to a payment rate they could better afford. Plaintiffs had never missed a payment until instructed to do so by SunTrust in February, 2010.

7

32.    By letter dated December 18, 2009, SunTrust mailed the Plaintiffs an acknowledgment of their request for a modification and documents for the Plaintiffs to fill out and complete to determine if they were eligible for a HAMP modification. The letter states: "because you have already contacted SunTrust Mortgage, Inc. about resolving your mortgage payment **delinquency**, …". (Emphasis added.) A copy of the letter is attached hereto and incorporated herein as Exhibit "C".

33.    It should be noted that the December 18, 2009, letter from SunTrust falsely asserts that the Plaintiffs' mortgage was delinquent. In fact, pursuant to the November 30, 2009 billing statement Plaintiffs received from SunTrust, at that point, their next contractual due date was January 1, 2010. A copy of the November 30, 2009, billing statement is attached hereto and incorporated herein as Exhibit "D".

34.    By letter dated January 20, 2010, SunTrust notified the Plaintiffs that they had been approved for a temporary loan modification under HAMP. In fact, the notification began with, "You did it! By entering into a Home Affordable Modification Trial Period Plan you have taken the first step toward making your payment more affordable." A copy of the 1/20/2010 letter is attached hereto and incorporated herein as Exhibit "E".

35.    On that same day, January 20, 2010, Defendant SunTrust also notified the Plaintiffs that they may qualify for a HAMP Temporary Payment Plan ("TPP"). A copy of the January 20, 2010 letter and documents attached thereto is attached hereto and incorporated herein as Exhibit "F".

36.    Said notice advised the Plaintiffs that they must provide information explaining their financial hardship via affidavit, submit required documentation, make timely monthly

8

payments during the trial period in the amount of $485.72, and advise SunTrust whether they agreed to the terms of the HAMP modification prior to March 1, 2010.

37.   The Plaintiffs were to begin making payments under the HAMP TPP with the first payment due on March 1, 2010, and the final payment due on June 1, 2010.

38.   The Plaintiffs fully complied with the terms listed above and as explained in the notice received by them from SunTrust.

39.   The Plaintiffs made every payment under the plan and continued to make such payments through October 1, 2010.

40.   By letter dated March 16, 2010, SunTrust acknowledged that they reported negative information on the debtor's credit report for the month January 2010. In fact, the Plaintiffs' had made their January payment and had made every mortgage payment under the original terms of their note and mortgage up to that date. A copy of the March 16, 2010, letter is attached hereto and incorporated herein as Exhibit "G".

41.   To be clear, the Plaintiffs were current on their mortgage loan when they entered into the TPP, and only missed their February, 2010 payment at the SunTrust's direction.

42.   At no time during or prior to the end of the TPP, were the Plaintiffs notified by SunTrust that they did not qualify for a permanent modification. Nor did the Plaintiffs receive any notices from SunTrust that they needed to provide additional documentation.

43.   Not until August 20, 2010, did SunTrust send the Plaintiffs an "original[,] fully executed" "Home Affordable Modification Trial Period Plan" that was signed by the Plaintiffs on February 27, 2010, and by a representative of SunTrust on May 20, 2010. A copy of the letter and executed TPP is attached hereto and incorporated herein as Exhibit "H".

44.     Even though the Plaintiffs were in compliance with the terms of the HAMP TPP, by letters dated September 28, 2010, and October 7, 2010, SunTrust notified the Plaintiffs that their agreed-to modification payments were being returned and that they were delinquent under the terms of their mortgage and note. Copies of the 9/28/2010 and 10/7/2010 letters are attached hereto and incorporated herein as Exhibit "I".

45.     Despite being current under their original mortgage and note when the HAMP TPP was offered to them and the Plaintiffs' perfect performance, Defendant SunTrust referred the Plaintiffs' mortgage to Wilson & Associates, PLLC ("Wilson"), for a foreclosure action.

46.     By letter dated November 23, 2010, Wilson notified Plaintiffs that they were in default under the terms of their original mortgage and note, and that their home would be auctioned off in a non-judicial foreclosure sale on January 24, 2010. The letter identifies SunTrust as the mortgagee.  A copy of the November 23, 2010 letter is attached hereto and incorporated herein as Exhibit "J".

47.     Despite the fact that the Plaintiffs were current under their original mortgage and note when they began making payments under the TPP and the Plaintiffs' perfect performance under the TPP, in an effort to save their home, the Plaintiffs contacted Wilson to find out what they could pay to bring their mortgage current.

48.     Plaintiffs were sent a "Reinstatement Form" dated December 2, 2010, that advised them to pay "$6,644.94" by December 8, 2010. A copy of the December 2, 2010, Reinstatement Form is attached hereto and incorporated herein as Exhibit "K".

49.     However, the Reinstatement Form was not mailed until Friday, December 3, 2010. As such, the earliest that the Plaintiffs would have received the reinstatement form would have been Monday, December 6th or Tuesday, December 7th - effectively giving the Plaintiffs'

two (2) days, at the most, to come up with the required funds. A copy of the post-marked envelope from Wilson is attached hereto and incorporated herein as Exhibit "L".

50.     Plaintiffs were able to gather the requested funds together, and wired them to Wilson on December 20, 2010. A copy of the wire transfer is attached hereto and incorporated herein as Exhibit "M".

51.     Wilson returned Plaintiff's $6,644.94 on January 6, 2011, and advised the Plaintiffs that their home was set to sell on January 24, 2010. Upon information and belief, these funds were never transferred to SunTrust. A copy of the letter and returned check are attached hereto and incorporated herein as Exhibit "N".

52.     Pursuant to this Court's January 18, 2011, Temporary Restraining Order, the Defendants are enjoined from concluding the foreclosure of the Plaintiffs' property interest.

## IV.     Plaintiff's Mortgage Account and Partial History

53.     On October 27, 2011, SunTrust sent a notification to the Plaintiffs, in violation of the Temporary Restraining Order, which states that SunTrust holds a security interest in the Plaintiffs' residence, and that the mortgage is past due and in default. The notice further states that the mortgage will be referred to a foreclosure attorney in approximately ten days. A copy of the notification is attached hereto and incorporated herein as Exhibit "O".

54.     Attached to the letter are copies of the original note with First National Bank, the mortgage, assistance options, and a partial mortgage payment history.

55.     The mortgage payment history shows accounting entries on the Plaintiffs' loan beginning with July 2, 2010 and continuing through October 17, 2011. A copy of this partial history is attached hereto and incorporated herein as Exhibit "P".

11

56.     Upon information and belief, and according to both the HAMP TPP documents and what can be inferred from the partial loan history, SunTrust took the reduced payments sent by Plaintiffs pursuant to the TPP and held those payments in a suspense account until such time as there were sufficient funds in the suspense account to make a regular contractual payment pursuant to the terms of the original mortgage.

57.     Upon information and belief, SunTrust applied the TPP payments made by the Plaintiffs to the oldest contractually due payment under the original mortgage note, beginning with the February 2010 payment, which SunTrust instructed the Plaintiffs not to make.

58.     As such, the TPP, in and of itself, created an artificial default and delinquency at a time when the Plaintiffs had been contractually current.

59.     Moreover, pursuant to the partial transaction history, SunTrust failed to apply the Plaintiffs' TPP payments to the regular contractually due amounts in a timely manner, thereby worsening the delinquency.

### THE STATUTORY FORECLOSURE OF PLAINTIFFS' HOME AND SUNTRUST'S IMPOSITION AND COLLECTION OF UNFAIR & UNCONSCIONABLE FEES

60.     On _____, Defendant Fannie Mae availed itself of the provisions of the SPA and initiated statutory foreclosure proceedings against the Plaintiffs' home.

61.     After the 2010 foreclosure action was commenced, upon information and belief based on the partial payment history received from SunTrust, the Plaintiffs have been charged $275.00 for posting a one page notice of sale at the County courthouse, $295.00 for listing their address on a website; attorney's fees that were charged for a flat fee before work on the foreclosure began, and various other fees and costs associated with the statutory foreclosure.

62.   These fees forced upon Plaintiffs and other members of the SunTrust Unfair Fee Class are unfair, unconscionable, and violate the provisions of the ADTPA.

## CLASS ACTION ALLEGATIONS

63.   Plaintiffs hereby re-allege and incorporate the foregoing Paragraphs, as if set forth herein, word for word.

64.   This action involves the prosecution of two separate and distinct class claims.

**A.   SunTrust Unfair Fee Class Allegations.**

65.   The SunTrust Unfair Fee Class is defined as follows:

> All residents of the State of Arkansas who owned real estate that was subject to non-judicial foreclosure proceedings pursuant to the Arkansas Statutory Foreclosure Act in the past five years preceding the filing of this complaint and until judgment is entered in this action, and in which Defendant SunTrust charged and collected any of the following fees: courthouse posting fees, internet posting fees, fees associated with title work, and attorneys' fees;  Excluded from the SunTrust Unfair Fee Class are SunTrust, its officers and directors, agents, and employees.

66.   Defendant SunTrust has been involved in thousands of statutory foreclosures throughout the State of Arkansas, and has collected the fees at issue in thousands of instances. For this reason, the SunTrust Unfair Fee Class is sufficiently numerous.

67.   Plaintiffs' claims are typical of the transactions between the Defendant SunTrust and all other Arkansans who have been subject to non-judicial foreclosure actions and were forced to pay the unfair and unconscionable fees at issue.  Indeed, the claim of Plaintiffs and the SunTrust Unfair Fee Class are typical.

68.   Plaintiffs' claims raise issues of fact or law, which are common to the members of the SunTrust Unfair Fee Class.  These common questions include, but are not limited to the following:

a.    Whether Defendant SunTrust charged and collected fees in relation to non-judicial foreclosures conducted in the State of Arkansas pursuant to the SFA;

b.    Whether such fees and their collection violated the provisions of the ADTPA.

69.   A class action is superior to other available methods of relief for the fair and efficient adjudication of the claims raised by Plaintiffs and members of the SunTrust Unfair Fees Class.

70.   In the absence of class-action relief, the putative class members would be forced to prosecute thousands of similar claims in different jurisdictions and venues throughout the State of Arkansas, which would waste the judicial resources within the State, and with the risk of inconsistent outcomes.

71.   The prosecution of the claims raised by Plaintiffs and members of the SunTrust Unfair Fees Class as a class action will promote judicial economy.

72.   The claims raised by Plaintiffs and members of the SunTrust Unfair Fees Class herein are well suited for class-action relief.

73.   A class action would benefit the Plaintiffs and members of the SunTrust Unfair Fees Class, and Defendant SunTrust through a single resolution of common questions of law or fact.

74.   Plaintiffs are interested in the outcome of this litigation and understand the importance of adequately representing the SunTrust Unfair Fees Class.

75.   Plaintiffs will fairly and adequately protect the interests of the SunTrust Unfair Fees Class.

14

76.    Plaintiffs have also retained counsel experienced in class action and complex consumer litigation, which are qualified to adequately represent the SunTrust Unfair Fees Class.

77.    As such, the claims of Plaintiffs and the SunTrust Unfair Fees Class are properly suited and satisfy each of the requirements of Rule 23 of the Arkansas Rules of Civil Procedure, and deserve to be certified as a class action.

**B.     Fannie Mae Non-Registration Class Allegations.**

78.    The Fannie Mae Non-Registration Class is defined as follows:

All residents of the State of Arkansas who owned real estate that was subject to non-judicial foreclosure proceedings pursuant to the Arkansas Statutory Foreclosure Act in the past five years preceding the filing of this complaint and until judgment is entered in this action, which were conducted by Defendant Fannie Mae. Excluded from the Fannie Mae Non-Registration Class are Fannie Mae, its officers and directors, agents, and employees.

79.    Defendant Fannie Mae has availed itself to the provisions of the SFA and conducted thousands of statutory foreclosures throughout the State of Arkansas in the past five years, and continues to do so.  For this reason, the Fannie Mae Non-Registration Class is sufficiently numerous.

80.    Plaintiffs' claims are typical of the transactions between the Defendant Fannie Mae and all other Arkansans who have been subject to non-judicial foreclosure actions conducted by Defendant Fannie Mae at times it was not authorized to do business in the State of Arkansas.  Indeed, the claim of Plaintiffs and the Fannie Mae Non-Registration Class are typical.

81.    Plaintiffs' claims raise issues of fact or law, which are common to the members of the Fannie Mae Non-Registration Class.  These common questions include, but are not limited to the following:

15

a.    Whether Defendant Fannie Mae availed itself of the provisions of the SFA
and conducted statutory foreclosures in the State of Arkansas in the past
five years;

b.    Whether Defendant Fannie Mae was properly registered to do business in
the State of Arkansas; and,

c.    Whether Defendant Fannie Mae met the "authorized to do business"
requirement of the SFA.

82.    A class action is superior to other available methods of relief for the fair and
efficient adjudication of the claims raised by Plaintiffs and members of the Fannie Mae Non-
Registration Class.

83.    In the absence of class-action relief, the putative class members would be forced
to prosecute thousands of similar claims in different jurisdictions and venues throughout the
State of Arkansas, which would waste the judicial resources within the State, and with the risk of
inconsistent outcomes.

84.    The prosecution of the claims raised by Plaintiffs and members of the Fannie Mae
Non-Registration Class as a class action will promote judicial economy.

85.    The claims raised by Plaintiffs and members of the Fannie Mae Non-Registration
Class herein are well suited for class-action relief.

86.    A class action would benefit the Plaintiffs and members of the Fannie Mae Non-
Registration Class, and Defendant Fannie Mae through a single resolution of common questions
of law or fact.

87.    Plaintiffs are interested in the outcome of this litigation and understand the
importance of adequately representing the Fannie Mae Non-Registration Class.

88.    Plaintiffs will fairly and adequately protect the interests of the Fannie Mae Non-Registration Class.

89.    Plaintiffs have also retained counsel experienced in class action and complex consumer litigation, which are qualified to adequately represent the Fannie Mae Non-Registration Class.

90.    As such, the claims of Plaintiffs and the Fannie Mae Non-Registration Class are properly suited and satisfy each of the requirements of Rule 23 of the Arkansas Rules of Civil Procedure, and deserve to be certified as a class action.

## COUNT I

### AS TO DEFENDANT FANNIE MAE

### VIOLATIONS OF THE ARKANSAS
### DECEPTIVE TRADE PRACTICES ACT

91.    Plaintiff and the Class Members re-allege and incorporate by reference all previous paragraphs as if fully set forth herein.

92.    The ADTPA, Ark. Code Ann. § 4-88-101, *et seq.*, is designed to protect Arkansans from deceptive, unfair and unconscionable trade practices. The ADTPA is a remedial statute, which is to be liberally construed.

93.    The practices employed by Defendant Fannie Mae in initiating non-judicial foreclosure proceedings without being authorized to conduct business in Arkansas are unfair and unconscionable under the ADTPA, and thus, violate the provisions of the ADTPA.

94.     Defendant Fannie Mae is engaged in "business, commerce, or trade," within the meaning of Ark. Code Ann. § 4-88-107(a)(10) and is a "person" within the meaning of Ark. Code Ann. § 4-88-102(5).

95.     Further, within the meaning of Ark. Code Ann. § 4-88-113(d) Defendant Fannie Mae "directly or indirectly" controlled others who might be liable for violations of the ADTPA and "knew or should have known" of the violations of the ADTPA.

96.     Defendant Fannie Mae's violations of the ADTPA resulted in Plaintiffs and the Class having their homes wrongfully foreclosed entitling them to actual damages pursuant to Ark. Code Ann. § 4-88-113(f).

97.     Defendant Fannie Mae is also liable for attorneys' fees, and enhanced penalties under the ADTPA.

## COUNT II

## AS TO DEFENDANT FANNIE MAE

### UNJUST ENRICHMENT

98.     Plaintiffs and the Class Members re-allege and incorporate by reference all previous paragraphs as if fully set forth herein.

99.     Defendant Fannie Mae received from the Plaintiffs and Class members certain monies and property as a result of Defendant Fannie Mae's conduct listed above which are unreasonable and excessive, and the result of overreaching.

100.    As a result, Plaintiffs and the Class have conferred a benefit on Defendant Fannie Mae, and Defendant Fannie Mae had knowledge of this benefit and has voluntarily accepted and retained the benefit conferred on it.

101.    Defendant Fannie Mae will be unjustly enriched if it is allowed to retain such funds and property, and Plaintiffs and each Class Member are entitled to such equitable relief as may be determined by the Court, in an amount equal to the amount Plaintiffs and each Class Member enriched Defendant Fannie Mae and for which Defendant Fannie Mae has been unjustly enriched.

102.    Further, Plaintiffs and the Class Members are entitled to equitable relief voiding all of Defendant Fannie Mae's non-judicial foreclosures for them and the Class where Defendant Fannie Mae failed to strictly comply with the provisions of the SFA.

## COUNT III

## AS TO DEFENDANT FANNIE MAE

## SLANDER OF TITLE

103.    Plaintiffs and the Class Members hereby re-allege and incorporate the foregoing Paragraphs, as if set forth herein, word for word.

104.    By engaging in unauthorized actions under the SFA, Defendant Fannie Mae has maliciously caused instruments to be filed of record in the offices of County Recorders of Arkansas, which adversely affect Plaintiffs and Class Members' title and interest in their real property.

105.    Defendant Fannie Mae has maliciously used instruments, filed of record, to exact money and property from Class Members.

106.    Defendant Fannie Mae's malicious actions violate Arkansas Code Annotated § 5-37-226.

107.    Plaintiffs and each member of the Class are entitled to judgment for actual damages, treble damages, punitive damages and judgment for attorneys' fees and costs.

## COUNT IV

## AS TO DEFENDANT SUNTRUST

## VIOLATIONS OF THE ARKANSAS DECEPTIVE TRADE PRACTICES ACT

63.    Plaintiff and the Class Members re-allege and incorporate by reference all previous paragraphs as if fully set forth herein.

64.    The ADTPA, Ark. Code Ann. § 4-88-101, *et seq.*, is designed to protect Arkansans from deceptive, unfair and unconscionable trade practices. The ADTPA is a remedial statute, which is to be liberally construed.

65.    The practices employed by Defendant SunTrust in charging and collecting unfair and unconscionable fees in non-judicial foreclosure proceedings violate the provisions of the ADTPA..

66.    Defendant SunTrust is engaged in "business, commerce, or trade," within the meaning of Ark. Code Ann. § 4-88-107(a)(10) and is a "person" within the meaning of Ark. Code Ann. § 4-88-102(5).

67.    Further, within the meaning of Ark. Code Ann. § 4-88-113(d) Defendant SunTrust "directly or indirectly" controlled others who might be liable for violations of the ADTPA and "knew or should have known" of the violations of the ADTPA.

68.    Defendant Fannie Mae's violations of the ADTPA resulted in Plaintiffs and the SunTrust Unfair Fees Class to suffer actual damages, and Defendant SunTrust is liable for their actual damages and attorneys' fees pursuant to Ark. Code Ann. § 4-88-113(f).

## COUNT II

## AS TO DEFENDANT SUNTRUST

## <u>UNJUST ENRICHMENT</u>

69.    Plaintiffs and the Class Members re-allege and incorporate by reference all previous paragraphs as if fully set forth herein.

70.    Defendant SunTrust received from the Plaintiffs and Class members certain monies and property as a result of Defendant SunTrust's conduct described above which are unreasonable and excessive, and the result of overreaching.

71.    As a result, Plaintiffs and the Class have conferred a benefit on Defendant SunTrust, and Defendant SunTrust had knowledge of this benefit and has voluntarily accepted and retained the benefit conferred on it.

72.    Defendant SunTrust will be unjustly enriched if it is allowed to retain such funds and property, and Plaintiffs and each Class Member are entitled to such equitable relief as may be determined by the Court, in an amount equal to the amount Plaintiffs and each SunTrust Unfair Fee Class Member enriched Defendant SunTrust and for which Defendant SunTrust has been unjustly enriched.

## <u>JURY DEMAND</u>

Plaintiffs reserve the right to amend this pleading as allowed by the Arkansas Rules of Civil Procedure and hereby demand a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and the Classes pray for the following relief:

    a.    An order certifying the claims asserted herein as class actions;

    b.    Awarding Plaintiffs and the Classes judgment on each of the claims asserted herein;

    c.    Awarding Plaintiffs and the Classes their damages, and punitive damages;

    d.    Awarding Plaintiffs and the Classes their attorneys' fee and costs of this litigation;

    e.    Awarding equitable relief on behalf of Plaintiffs and the Fannie Mae Non-Registration Class by invalidating all of Defendant Fannie Mae's statutory foreclosures within the State of Arkansas during the Class Period related to them;

    f.    Disgorging all sums unjustly received by Defendants and provide such sums to Plaintiffs and the Classes in equitable measures; and,

    g.    Awarding Plaintiffs and the Class all other damages, awards, and injunctive relief the Court finds to be proper and just.

Dated: April 17, 2012                         Respectfully Submitted,

Joel Hargis
CRAWLEY DELOACHE & HARGIS
533 West Washington
Jonesboro, AR 72401

05/09/2012 09:28 FAX  870 239 3550       GREENE CO. CIRCUIT CLERK                    024/062
8709721787

                                                          11:13:33 a.m.    04-17-2012        24/25

Scott E. Poynter
Christopher D. Jennings
William T. Crowder
Corey D. McGaha
EMERSON POYNTER LLP
500 President Clinton Ave., Ste. 305
Little Rock, AR 72201

John G. Emerson (AR Bar. 08012)
EMERSON POYNTER LLP
830 Apollo Lane
Houston, TX 77058
Phone: (281) 488-8854
Fax: (281) 488-8867

Kathy A. Cruz
THE CRUZ LAW FIRM
1325 Central Avenue
Hot Springs, AR 71901

Todd Turner
Dan Turner
ARNOLD, BATSON, TURNER&
TURNER, P.A.
501 Crittenden Street
P.O. Box 480
Arkadelphia, AR 71923

Annabelle Patterson
ANNABELLE LEE PATTERSON, PLC
646 Quapaw Ave.
Hot Springs, AR 71901

COUNSEL FOR PLAINTIFF
AND THE DEFINED CLASSES

05/09/2012 09:28 FAX  870 239 3550        GREENE CO. CIRCUIT CLERK                    ☑025/062
8709721787
                                                          11:13:39 a.m.   04-17-2012      25/25

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing document was served upon the following counsel on this 17th day of April 2012.

Mitchell L. Berry
Alicia Austin Smith
EICHENBAUM, LILES & HEISTER, P.A.
124 West Capitol Avenue, Suite 1900
Little Rock, AR 72201-3717
Phone: (501) 376-4531
Facsimile: (501) 376-843

Joel G. Hargis

24